# IN THE COURT OF APPEALS OF IOWA

No. 20-0608
Filed April 14, 2021

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**TRE DESEAN HENDERSON,**
　　　　Defendant-Appellant.
_____

　　　　Appeal from the Iowa District Court for Scott County, Thomas Reidel, Judge.

　　　　Defendant appeals his convictions for first-degree murder and child endangerment—multiple acts.  He also challenges a merged charge of child endangerment resulting in death.  **AFFIRMED.**

　　　　Martha J. Lucey, State Appellate Defender, and Maria Ruhtenberg, Assistant Appellate Defender, for appellant.

　　　　Thomas J. Miller, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.

　　　　Considered by May, P.J., and Greer and Schumacher, JJ.

**SCHUMACHER, Judge.**

Tre Desean Henderson appeals his convictions for first-degree murder and multiple acts of child endangerment. Henderson also appeals the jury's guilty verdict as to child endangerment resulting in death. Henderson's sole challenge on appeal is sufficiency of the evidence. We find the jury verdict supported by substantial evidence. Accordingly, we affirm Henderson's convictions.

## I.      Background Facts

A reasonable jury could determine from the evidence presented the following facts.[1] J.B. was a "joyful" child who resided with his mother in Davenport, Iowa. He enjoyed music, dancing, playing outside, and Paw Patrol.[2] The defendant, Henderson, moved in with J.B. and his mother on February 23, 2018. J.B. turned five years old in March 2018; he died on May 1, 2018. J.B's cause of death was determined to be complications of blunt force injuries of the head, with the manner of death being homicide.

During the two months preceding his death, J.B. was left in the care of Henderson when his mother was at work. Henderson was not employed. Leading up to the death of the child, Henderson engaged in multiple incidents of violence

---

[1] The State's evidence included testimony from the Director of the Scott County Emergency Communications Center, two paramedics, the lead crime scene technician for the Davenport Police Department, a medical examiner, firefighters, a surgeon, a pediatric radiologist, a general pediatrician, a child abuse pediatrician, law enforcement officers, preschool teachers, and friends and relatives of the child, including J.B.'s mother. Henderson testified. The jury also heard defense testimony from Henderson's mother, several neighbors, a former daycare provider, a preschool teacher, and the mother of two of Henderson's biological children.

[2] Paw Patrol is an animated series that focuses on a crew of search and rescue dogs that call themselves the PAW Patrol. Each dog has a specific set of skills based on emergency service professions, such as a firefighter, a police officer, and an aviation pilot.

towards J.B. Henderson beat J.B. with a belt. Neighbors heard Henderson yelling profanities at J.B. J.B. became withdrawn and appeared terrified of Henderson.[3] Henderson tied J.B.'s hands and feet together and locked him in a dark closet. He removed the toys J.B. slept with and placed them on a shelf out of reach of the child. The worst was yet to come.

On Sunday, April 22, 2018, J.B's mother went to work and left J.B. in the sole care of Henderson. On this date, J.B. suffered a head injury. Henderson explained the child's injury by saying J.B. fell off the kitchen counter and struck the back of his head. Henderson testified when he found J.B. in the kitchen "it looked like he was unconscious." According to the mother's testimony, Henderson insisted J.B. not be taken to the hospital and told her J.B. would be removed from her care due to his substantial visible injuries, including a black eye. The week following, J.B. suffered from a reduced appetite, vomited after eating, and exhibited poor balance. J.B.'s mother stayed home Monday through Thursday with J.B. and Henderson. The mother testified it was during this week she punched her son, breaking a rib.

On Friday, April 27, 2018, J.B.'s mother left for work around 8:30 a.m., again leaving J.B. in the sole care of Henderson. Henderson slept until 11:00 a.m. and testified J.B. was acting normally throughout the day. He stated J.B. exhibited no signs from his previous injury. Henderson testified he put J.B. to bed before the mother returned home at approximately 4:45 p.m. Henderson and J.B's mother

---

[3] In addition to testimony concerning the child's demeanor, law enforcement recovered videos deleted from Henderson's cell phone, which also demonstrate the child's demeanor in Henderson's presence.

informed medical personal they heard J.B. choking later that evening, resulting in the mother calling 911. Paramedics, arriving soon after the 911 call, noted that J.B.'s extremities were cold to the touch. They did not find a blockage to his airways that would have caused the reported choking. They did, however, find the child's body was covered with bruises. Medical personnel suspected a brain injury. Due to these suspicions, the lead paramedic alerted law enforcement.

J.B. was taken via ambulance to the local hospital and then life-flighted to the University of Iowa Hospitals and Clinics. J.B. was determined to have injuries of differing age, including seventeen rib fractures, three vertebral fractures, an occipital skull fracture, deep scalp bruising, twenty-plus head impacts, multiple brain bleeds, including a subdural hematoma, injuries to both optic nerves, hemorrhaging in both eyes, a tear in his small intestine, and a hemorrhage in his right kidney. J.B.'s brain had swollen through the base of his skull. J.B. was declared brain dead due to his injuries and removed from life support. He passed away on May 1, 2018—approximately two months after Henderson took up residency in the Davenport home.

Henderson was charged with first-degree murder under Iowa Code section 707.2 (2018), child endangerment—multiple acts under section 726.6A, and child endangerment resulting in death in violation of section 726.6(1) and (4). A jury trial commenced on February 3, 2020. On February 13, the jury found Henderson

guilty on all three counts.[4]  Henderson appeals his convictions.[5]

## II.	Sufficiency of the Evidence

### A.	Murder in the First Degree

Henderson claims there is insufficient evidence in the record to support his convictions.  With regard to the murder charge, Henderson takes issue with two evidentiary concerns.  He argues there was insufficient evidence offered by the State to prove he did an act causing the death of J.B., and further argues the State provided insufficient evidence that he acted with malice aforethought.[6]

In regard to claims challenging sufficiency of the evidence, the Iowa Supreme Court has stated:

---

[4]J.B.'s mother was also charged with the same counts.  She reached a plea agreement with the State and entered pleas of guilty to child endangerment—multiple acts, and child endangerment resulting in death, both class B forcible felonies.  The plea agreement required her to testify truthfully at Henderson's trial.  As part of the mother's plea agreement, the murder charge would be dismissed at sentencing.

[5] The district court found the conviction for child endangerment resulting in death merged with the conviction for murder in the first degree and did not enter judgment on that count.

[6] Henderson does not argue that the evidence was insufficient because the State failed to prove he killed J.B. on April 22 instead of April 27.  Even if Henderson were to raise such claim on appeal, we find it unpreserved because the defendant did not argue the date as a reason for judgment of acquittal.  However, even if Henderson had preserved that argument, it fails because the date is not an element of murder and the State only needed to alert the defendant of the crime it was prosecuting.  *State v. Yeo*, 659 N.W.2d 544, 550 (Iowa 2003) ("[O]ur general rule [is] that the State is not required to prove the precise time and place of a crime."); *State v. Parmenter*, No. 18–1997, 2019 WL 6907457, at *5 (Iowa Ct. App. Dec. 18, 2019) ("The phrase 'on or about' is a legal term of art that means 'approximately' and is used 'to prevent a variance between the pleading and the proof, usually when there is any uncertainty about the exact date of a pivotal event.'" (citation omitted)); *State v. Doyle*, No. 12–1624, 2013 WL 4011089, at *4 (Iowa Ct. App. Aug. 7, 2013).  Henderson knew he was being prosecuted for killing J.B., which happened in April 2018.  Any attack on the date of the murder does not warrant relief.

Sufficiency of the evidence claims are reviewed for corrections of errors at law. In making determinations regarding the sufficiency of the evidence, we "view the evidence in the light most favorable to the state, regardless of whether it is contradicted, and every reasonable inference that may be deduced therefrom must be considered to supplement that evidence." If the record contains substantial evidence to support the defendant's conviction, we will uphold a trial court's denial of a motion of acquittal. "Evidence is substantial if it would convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." Evidence can be either circumstantial or direct, or both. Evidence is substantial if a reasonable trier of fact would be convinced that the defendant is guilty beyond a reasonable doubt.

*State v. Lilly*, 930 N.W.2d 293, 298 (Iowa 2019) (citations omitted).

Following the denial of a defense motion for judgment of acquittal, the district court instructed the jury as follows for the charge of murder in the first degree:

Under Count 1, the State must prove all of the following elements of Murder in the First Degree:
    1. On or about the 22nd day of April, 2018, the defendant caused blunt force injuries to [J.B.].
    2. [J.B.] was then under the age of 14.
    3. [J.B.] died as a result of a blunt force injury.
    4. The defendant acted with malice aforethought.
    5. The defendant was a person who was the parent, guardian, person having control over [J.B.], or was a member of the household where [J.B.] resided.
    6. The defendant by an intentional act or a series of intentional acts, used unreasonable force, torture or cruelty that resulted in bodily injury to [J.B.]
        or
The defendant was committing the offense of assault, as defined in these instructions, upon [J.B.]
    7. [J.B.]'s death occurred under circumstances showing the defendant's extreme indifference to human life.
        If the State has proved all of the elements, the defendant is guilty of Murder in the First Degree under Count I.

We determine there is substantial evidence in the record to support the necessary elements of the above jury instruction. While Henderson is correct in his assertion there is no witness with personal, direct observation of him inflicting injury on J.B., we determine the State presented significant circumstantial

evidence to prove beyond a reasonable doubt Henderson caused the injuries to J.B. *See State v. Trowbridge*, No. 12-2271, 2014 WL 955404 at *3 (Iowa Ct. App. March 12, 2014) (finding the serious nature of injuries, testimony from medical experts, and that child was in the care of defendant provided substantial evidence to support convictions for first-degree murder and child endangerment resulting in death).

The record shows that J.B. was recovering from the injuries he sustained from an alleged April 22 fall from the kitchen counter while in Henderson's sole care. The child was left alone with Henderson the day the fatal injuries occurred. Multiple medical providers opined that the injuries sustained by J.B. were almost certainly intentionally inflicted, with the brain injury inflicted by significant violent trauma, occurring only in a violent mechanism, such as a high-speed motor vehicle injury or abusive injury, and occurred within days or hours of his death. Moreover, the extent and nature of J.B.'s injuries lend themselves to showing that his injuries were intentional. As previously stated, J.B. suffered multiple rib fractures, vertebrae fractures, and other internal injuries.[7]

We similarly determine there is substantial evidence in the record to show Henderson acted with malice aforethought. The jury was instructed that malice aforethought is defined as "a fixed purpose or design to do some physical harm to another which exists before the act is committed." The nature of J.B.'s injuries show that Henderson acted with "a fixed purpose." *See State v. Blanchard*, No.

---

[7] Henderson highlights that the mother admitted to breaking a rib of J.B. While this may show that one of J.B.'s injuries was not inflicted by Henderson, it does not explain the injuries sustained by J.B. that led to his death.

09-0871, 2010 WL 2089222, at *4 (Iowa Ct. App. May 26, 2010) (finding the "severity and nature" of injuries to child provided substantial evidence of malice). J.B. had multiple injuries, which varied in age. Although his death was caused by the most recent trauma to the head, the full extent of injuries to J.B. ranged from multiple weeks in age to those ultimately resulting in his death. The record supports a finding of malice aforethought.

Considering the evidence in the light most favorable to the State, there is substantial evidence in the record to support the jury's verdict finding Henderson guilty of first-degree murder.

### B.    Child Endangerment–Multiple Acts

Henderson similarly claims there is insufficient evidence in the record to support a conviction for multiple acts of child endangerment. He argues that the State failed to prove that he "engaged in a course of conduct which included three or more separate and distinct acts of child endangerment . . . within a period of twelve months."

The district court instructed the jury on the charge of Multiple Acts of Child Endangerment as follows:

> Under Count 2, the State must prove all of the following elements of Multiple Acts of Child Endangerment:
>     1.   On or about the 27th day of April, 2017 through the 27th day of April, 2018, the defendant was a person who had custody or control over [J.B.], or was a member of the household where [J.B.] resided.
>     2.   [J.B.] was then under the age of 14.
>     3.   The defendant knowingly acted in a manner which created a substantial risk to the physical, mental or safety of [J.B], or
>     The defendant by an intentional act or series of intentional acts, used unreasonable force, torture or cruelty that resulted in bodily injury, or that was intended to cause serious injury to [J.B.], or

The defendant willfully deprived [J.B.] of necessary health care, while the defendant was reasonably able to make necessary provisions and the deprivation substantially harmed [J.B.]'s physical, mental or emotional health.

4. The defendant engaged in a course of conduct which included three or more separate and distinct acts of child endangerment, as defined herein, within a period of twelve months.

5. One or more of the acts of child endangerment resulted in serious injury to [J.B.]

If the State has proved all of the elements, the defendant is guilty of Multiple Acts of Child Endangerment under Count 2.

When viewing the evidence in a light most favorable to the State, we find at a minimum three separate acts of child endangerment supported in the record. As discussed, we find substantial evidence in the record to support the conclusion it was Henderson that caused J.B.'s death. This qualifies as one of the three instances of child endangerment. A second instance of child endangerment is supported by Henderson's conduct on April 22, 2018. Henderson willfully deprived J.B. of necessary healthcare by refusing to take him to a medical provider after his alleged fall. To the contrary, Henderson convinced J.B.'s mother to avoid taking J.B. to the doctor. A third instance of child endangerment is evidenced by J.B.'s mother's testimony that Henderson "basically had beat my son with a belt." This instance occurred on the afternoon of April 20, 2018. The record further shows numerous instances of Henderson acting aggressively towards J.B. Henderson tied J.B.'s feet together and locked him in a closet. The neighbor overheard Henderson yelling obscenities at J.B.

Considering the evidence in the light most favorable to the State, there is substantial evidence in the record to support the jury's verdict finding Henderson guilty of multiple acts of child endangerment.

**C.      Child Endangerment Resulting in Death**

Henderson lastly claims there is insufficient evidence to support a conviction of child endangerment resulting in death because "the State failed to produce[ ] evidence of one act, much less three acts committed by the defendant that he 'used unreasonable force, torture, or cruelty that resulted in bodily injury' or death."

The district court instructed the jury on the charge of child endangerment resulting in death as follows:

> Under Count 3, the State must prove all of the following elements of Child Endangerment resulting in Death:
> 1.   On or about 22nd day of April, 2018, the defendant was a person who had custody or control over [J.B.], or was a member of the household where [J.B.] resided.
> 2.   [J.B.] was then under the age of 14.
> 3.  The defendant by an intentional act or series of intention acts, used unreasonable force, torture or cruelty that resulted in bodily injury, or that was intended to cause serious injury.
> 4.   The defendant's acts resulted in the death of [J.B.].
> If the State has proved all of the elements, the defendant is guilty of Child Endangerment resulting in Death under Count 3.

The district court merged Count 3 (child endangerment resulting in death) into Count I (murder in the first degree).  As such, a judgment of conviction was not entered on the child endangerment resulting in death count.  Even in the absence of the merger, there is sufficient evidence in the record as set forth previously to support the jury's verdict as to Count 3.  As discussed above, when viewed in a light most favorable to the State, sufficient evidence was presented to support elements 1–4.  J. B. was five years old, the defendant by an intentional act or serious of intentional acts, used unreasonable force, torture, or cruelty that resulted in bodily injury, or that was intended to cause serious injury, and Henderson's act resulted in the death of J.B.

**III.    Conclusion**

We affirm Henderson's convictions for first-degree murder and child endangerment—multiple acts.    As to Henderson's appeal on the child endangerment resulting in death, even in the absence of the merger, we find sufficient evidence to support the jury's verdict.

**AFFIRMED.**